**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SINAIA KEITH<br>330 First Avenue, Apt. 5E<br>New York, NY 10009<br><br>Plaintiff,<br><br>v.<br><br>TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA d/b/a UNIVERITY OF PENNSYLVANIA<br>3450 Hamilton Walk<br>Philadelphia, PA 19104<br><br>Defendant. | CIVIL ACTION<br><br>No.:______________________<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. This action has been initiated by Sinaia Keith ("Plaintiff") against the Trustees of the University of Pennsylvania d/b/a University of Pennsylvania ("Defendant") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII – 42 U.S.C. §§ 2000d *et. seq.*). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2. This action is being initiated pursuant to federal laws and therefore, the United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania. Venue is further appropriate in this District as Defendant employed Plaintiff in this District and because the actions and/or omissions underlying this lawsuit occurred in this District.

5. Plaintiff is proceeding herein under Title VII and has exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and by filing the instant lawsuit within ninety (90) days of receiving a right to sue letter from the EEOC.

**PARTIES**

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual residing at an address as set forth in the caption.

8. Defendant is a Pennsylvania non-profit organization that owns and operates various medical service facilities and businesses including medical research laboratories.

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is a 26-year-old woman.

12. Plaintiff was hired by Defendant as an Undergraduate Researcher on a part-time basis in or about May 2020.

13. Beginning on or about June 1, 2022, Plaintiff became a full-time Research Specialist with Defendant until her termination effective on or about March 1, 2023.

14. At all times, Plaintiff worked within Nathaniel Dyment's (Assistant Professor of Orthopaedic Surgery - "Dyment") Laboratory in the McKay Orthopaedic Research Laboratory and fell under Dyment's supervision.

15. In or about the fall of 2021, Plaintiff was the only woman working on the ACL Reconstruction Project in Dyment's lab.

16. Dyment singled Plaintiff out in many ways because she is a woman, treating her unfairly as opposed to male employees.

17. For example, Dyment scheduled important project meetings for times during which he knew Plaintiff had class and could not attend the meetings. When Plaintiff asked Dyment if he could adjust times of the meetings so she could attend them in full, Dyment told her no because the time he chose was more convenient for everyone else (meaning the male staff on the project). He, however, could have adjusted such times for full inclusion.

18. As another example, Dyment refused to give Plaintiff training on biomechanics, a type of training that is industry standard for someone in her position. However, two (2) male

employees, Jonathan Marcelin ("Marcelin") and Rashad Madi ("Madi") were given training on biomechanics immediately upon their hire in or about the fall of 2021.

19. Plaintiff asked Dyment for biomechanics training or mentorship about half a dozen times as it was essential to her work on the ACL Reconstruction Project. Dyment refused to give her this training, telling Plaintiff it "cost money" to train her and she could "just ask the men for help" instead. Dyment specifically mentored males upon basic questions or inquiries upon other matters as well, while declining to mentor Plaintiff similarly.

20. Dyment also failed to credit Plaintiff properly for work she performed on several published research projects.

21. In medical research, the authorship order listed on a publication indicates the amount of work performed and the significance of the contributions made by that author.

22. On or about May 4, 2022, Plaintiff complained to Dyment that Madi, who joined the lab a year and a half after Plaintiff and made less significant contributions to the project, was listed prior to Plaintiff in the authorship list.

23. By placing Plaintiff lower on the authorship, Dyment was diminishing her work and contributions to instead highlight those of her male colleague. Publication credit is very important within Defendant's industry (as to where Plaintiff worked and was assigned).

24. In response to Plaintiff's complaint about authorship order on or about May 4, 2022, Dyment reacted in a negative manner, begrudgingly telling Plaintiff he would move her above Madi (because he knew that was the correct authorship order) but also telling Plaintiff not to complain to him about authorship order again.

25. Beginning in or about September 2022, Dyment's behavior toward Plaintiff grew increasingly aggressive and hostile. He began raising his voice at Plaintiff frequently, cursing at her, and/or completely ignoring her. He did not do this to Plaintiff's male colleagues.

26. Dyment would also make comments about women under his employ or in relationships with the men in his employ babysitting his children or changing their diapers, insinuating this was a woman's job and not that of a man.

27. Dyment's misbehavior and overt gender discriminatory mistreatment escalated so significantly that Plaintiff was extremely uncomfortable and nervous at work, always worried Dyment would begin yelling or cursing at her at any moment.

28. In or about October 2022, Plaintiff met with Dyment to address her concerns. She told Dyment she believed he was treating her differently because of her sex/gender. Her hope was to address the matter directly with him to have a non-hostile work environment thereafter. Dyment refused to acknowledge the way he was mistreating Plaintiff and instead told her she was "confrontational" and "not a team player." When Plaintiff asked for examples, Dyment could not provide them. But Plaintiff again perceived this to be discrimination because a woman was speaking up about a concern to him.

29. During this October 2022 conversation, Dyment told Plaintiff that if she could not deal with how he treated her, she should "find a better place to be." Plaintiff felt Dyment was threatening to terminate her if she continued to question his mistreatment of her.

30. In or about early November 2022, Dyment submitted Plaintiff's conference abstract for the Orthopaedic Research Society ("ORS") instead of allowing her to submit it on her own like he allowed other employees to do. Plaintiff believes Dyment did this to show her

Dyment had control over her employment and work in retaliation for her complaints about authorship order.

31. On or about November 18, 2022, Plaintiff initiated another discussion with Dyment regarding authorship because Madi was being assigned work on the project and she was concerned Dyment would again try to place him earlier in the authorship order than her.

32. When Plaintiff initiated the conversation on or about November 18, 2022, Dyment responded very aggressively to Plaintiff, screaming at her and telling her he would "rather fucking quit" then explain to her why he chose the authorship order he did. Plaintiff's concern though was very legitimate and should have been addressed in a professional manner. Dyment was unwilling to have a civil discussion about the potential for further discrimination with the addition of another male to the project.

33. On this same day, on or about November 18, 2022, Plaintiff also sent an email to the Department of Orthopaedic Surgery's, Diversity, Equity, and Inclusion ("DEI") chairs Eileen Shore ("Shore" – Research Professor) and Sarah Gullbrand ("Gullbrand" – Research Assistant Professor) to request a meeting to discuss her concerns about Dyment's discriminatory and hostile behavior.

34. Plaintiff met with Shore and Gullbrand on or about December 2, 2022. Plaintiff explained that Dyment was treating her poorly and that she believed she was being discriminated against and targeted by him because of her sex/gender. Shore and Gullbrand directed Plaintiff to request a meeting with Defendant's Ombudsman, Waged Jafer ("Jafer").

35. After the December 2, 2022 meeting with Shore and Gullbrand, Plaintiff requested a meeting with Jafer and asked Shore and Gullbrand to escalate her complaints of gender

discrimination and harassment to Dyment's supervisor, Louis Soslowsky ("Soslowsky" – Vice Chair for Research, Department of Orthopaedic Surgery).

36. Also, in or about early December 2022, Plaintiff met with Jafer to raise her complaints of gender discrimination and hostile work environment.

37. On or about December 7, 2022, Dyment removed Plaintiff from the ACL Reconstruction Project and told Plaintiff she could be returned to the project if she promised to "never even ask about authorship again." This was both highly unprofessional and retaliatory.

38. Dyment also told Plaintiff he would return her to another project because she "needed something to do" until her "time is done." It was apparent that Dyment was informing Plaintiff her position would not be extended another year.

39. On numerous occasions, Dyment had made comments or statements to Plaintiff that made it clear he was in control of her ongoing employment and insinuated he would withhold a recommendation letter for medical school applications if Plaintiff did not simply go along with his behaviors.

40. Also on or about December 7, 2022, Plaintiff again complained to Shore and Gullbrand about gender discrimination and a hostile work environment.

41. Plaintiff continued updating Shore and Gullbrand about Dyment's rude and demeaning behavior throughout December 2022, continuously asking them to get involved and to involve Soslowsky.

42. Plaintiff then met with Soslowsky on or about December 16, 2022. Plaintiff reiterated her complaints of gender discrimination to Soslowsky. Soslowsky was very defensive of Dyment throughout the meeting.

43. Despite Plaintiff's requests to keep some of her complaints confidential, especially from Dyment, Dyment became aware of her escalated complaints on or about December 22, 2022 (as to those she expressed about and concerning him to various higher levels of management).

44. Dyment sent a message to Plaintiff telling her that he was cancelling their weekly meetings "until the issues with the Ombudsman were resolved."

45. Dyment also began stripping Plaintiff of almost all of her job duties and told her not to come to any more meetings for the current project she was working on.

46. Plaintiff complained to Soslowsky, Shore, and Gullbrand that Dyment was retaliating against her because of her complaints about discrimination and a hostile work environment. Nothing was done to meaningfully address Plaintiff's complaints.

47. In or about the end of December 2022, Plaintiff had another meeting with Jafer. During this meeting, Jafer told Plaintiff "Dyment is your boss and he can do whatever he wants to you." She also stressed to Plaintiff that her employment was at-will. Plaintiff felt Jafer was threatening her employment because of her complaints of gender discrimination and retaliation.

48. Thereafter, Soslowsky sent Plaintiff an email on or about January 10, 2023 "to document the plan moving forward." Soslowsky's indicated his email was a list of projects and tasks Plaintiff was to work on for her "remaining time in the lab."

49. At the time Soslowsky sent the January 10, 2023 email, Plaintiff was still an active employee of Defendant and had not been terminated or told that she would be.

50. Plaintiff responded to Soslowsky's email on or about January 11, 2023 telling Soslowsky, "it seems as though I am being fired, which I consider retaliation for my having reported Nat and his actionable behavior."

51. Thereafter, on or about January 30, 2023, Plaintiff was informed her position was being terminated due to an alleged "lack of grant funding."

52. Plaintiff was confused by this alleged lack of funding because just days prior, on or about January 26, 2023, it was announced that Dyment had received an $8 million grant from the National Institutes of Health. Moreover, prior to so many escalations of discrimination and retaliation concerns, Plaintiff was discussing expectations, goals, and areas of focus through the end of 2023 (and years to follow).

53. Plaintiff's last day of work with Defendant was on or about January 30, 2023 and her termination was effective on or about March 1, 2023.

54. Because Plaintiff was terminated and her last day of work was January 30, 2023, Defendant prohibited her from attending the ORS conference in mid-February 2026 despite being employed by Defendant until March 1, 2023.

55. Defendant spent more money to cancel Plaintiff's registration for the ORS conference than they would have spent to allow her to attend and present the work she submitted.

56. Instead, Dyment attended the ORS conference and presented Plaintiff's poster (which was a task Soslowsky told Plaintiff in his January 10, 2023 had to be completed by the end of January 2023).

57. Upon information and belief, Dyment has since hired additional full-time staff for his lab.

58. It is apparent that there was funding available to retain Plaintiff as a full-time Research Specialist.

59. Plaintiff believes and therefore avers that she was really terminated because she is a woman and in retaliation of her complaints of gender/sex discrimination and complaints of retaliation for having complained of gender/sex discrimination.

**COUNT I**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Sex/Gender Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**

60. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

61. During Plaintiff's employment with Defendant, she was subjected to discrimination through disparate treatment because of her sex/gender.

62. Dyment spoke to Plaintiff in a rude and disrespectful manner and scheduled meetings for times Plaintiff could not attend, which he did not do to her male colleagues.

63. Dyment also listed Plaintiff lower in authorship than her male colleague who did not work on the project as long as Plaintiff and did not make the same contributions as her.

64. Plaintiff raised several complaints of gender discrimination, but Dyment's discriminatory behavior did not stop.

65. Instead, Plaintiff was removed from projects, left out of meetings, and still treated differently than her male colleagues.

66. Plaintiff was also subjected to verbal abuse, hostile behavior, threats, intimidation, and other forms of mistreatment on a weekly basis.

67. Plaintiff believes and therefore avers that she was subjected to a hostile work environment and then terminated from her position with Defendant because of her sex/gender and her complaints of gender discrimination / complaints of retaliation.

68. These actions constitute unlawful sex/gender discrimination and retaliation under Title VII.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered discrimination or retaliation at the hands of Defendant until the date of verdict;

B. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law(s) asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

E. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

F. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________
Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: September 3, 2026

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Sinaia Keith | : | CIVIL ACTION |
| v. | : | |
| Trustees of the University of Pennsylvania d/b/a University of Pennsylvania | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| 9/3/2026 | [signature] | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Defendants place of business

***RELATED CASE IF ANY:*** Case Number:____________ Judge:____________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:____________

**B.** ***Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):____________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*____________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

KEITH, SINAIA

**(b)** County of Residence of First Listed Plaintiff: New York

*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA D/B/A UNIVERSITY OF PENNSYLVANIA

County of Residence of First Listed Defendant: Philadelphia

*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - mployment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***: Title VII (42USC2000)

Brief description of cause: Violations of Title VII.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*: JUDGE ______ DOCKET NUMBER ______

DATE: 9/3/2026 SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____